IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE: RAY AND LISA SHARP                                    CASE NO. 3:07-bk-12721
   Debtors

SIERRA M. ANDERSON                                            PLAINTIFF

v.                              AP NO. 3:07-ap-01241

RAYMOND B. SHARP and,                                         DEFENDANTS
LISA SHARP

**CORRECTED**
**MEMORANDUM OPINION**

On July 30, 2008, the Court heard Sierra Anderson's ("**Anderson**") *Complaint Objecting to Discharge and to Determine Dischargeability of Debt* ("**Complaint**") against the debtors, Raymond Sharp and Lisa Sharp ("**Sharps**"). Will Kueter ("**Kueter**") appeared for Anderson, and Jeannette Robertson ("**Robertson**") appeared for the Sharps. At this hearing, both parties presented arguments and evidence, and the matter has since been under advisement.

**FACTS**

This case is about unfortunate circumstances. Lisa Sharp had been the home nurse for Anderson's mother ("**Ms. Anderson**") during Ms. Anderson's long battle with cancer. Prior to her death, Ms. Anderson asked the Sharps (who had by then become close family friends) to take Anderson in. Thus, the Sharps were appointed Anderson's guardians on April 27, 2008.

The Sharps hardly live ostentatiously. Together, they make $25,000 a year. Their

1

home is valued at $50,000, and is encumbered by a mortgage for the full value. They have two children of their own, one of whom is seriously ill. They took in Anderson because of a promise made to her mother, and loved her as they loved their own children.

Anderson alleges that after she turned 18, she requested that her estate be turned over to her, and for an accounting of the estate. On February 1, 2007, Anderson filed a suit for conversion in the Circuit Court of Poinsett County. On March 8, 2007, Anderson filed a petition for accounting against the Sharps. On May 23, 2007, the Sharps filed for chapter 7 bankruptcy, listing Anderson as a lawsuit creditor. On August 27, 2007, Anderson filed her Complaint, alleging that the Sharps received $231,779.39 on her behalf throughout the term of their guardianship, requesting that the Sharps not receive a discharge under 11 U.S.C. §§ 727(a)3 and 727(a)(5), and the debt arising out of her guardianship be found nondischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The evidence received at the July 30, 2008 hearing makes it clear that the Sharps were ignorant of their responsibilities as Anderson's guardians as set forth in the guardianship order, unaware that they needed to keep an accurate accounting of Anderson's estate, and oblivious to the requirement that Anderson's estate be held subject to court order. The Sharps acted as if they had adopted Anderson, incognizant of any difference between adoption and guardianship.

Further, the Sharps' family account and Anderson's estate are almost hopelessly co-mingled. All money coming in, whether it be a paycheck for Ray Sharp or the remainder of Anderson's certificate of deposit, was placed into a single family account. Anderson was

freely allowed to write checks from this account using Lisa Sharp's name. Even the extent of the records the Sharps kept with respect to Anderson's estate is unknown, for Lisa Sharp testified that they had gone missing, and Anderson testified to taking a folder with certain documents (including her birth certificate and her mother's death certificate), but denied that any financial records were in it.

However, the evidence presented at the hearing, appallingly limited as it was, proffered no suggestion that the Sharps intended to convert Anderson's money or attempted to injure Anderson. No evidence demonstrated that the Sharps had secreted away or were otherwise hiding assets from the court. No evidence implied that the Sharps' current financial condition was somehow in question.

## DISCUSSION

### 11 U.S.C. § 727(a)(3)

Anderson alleges that the Sharps have, "concealed, destroyed or failed to keep or preserve any recorded information, including books, documents, records and papers, from which their financial condition or business transactions (namely income and expenses of the ward's estate) might be ascertained," mirroring closely the language of § 727(a)(3). Under § 727(a)(3), "[t]he party objecting to a debtor's discharge bears the initial burden to prove that the debtor failed to keep and preserve [their] financial records and that this failure prevented the party from ascertaining the debtor's financial condition." *In re Wright*, 353 B.R. 627, 649 (Bankr.E.D.Ark. 2006) (quoting *In re Beshears*, 196 B.R. 468 (Bankr.E.D.Ark. 1996)). Here, there is a significant question concerning the adequacy of the

3

Sharps' records. However, Anderson never demonstrated that the Sharps' lack of financial records prevented her from ascertaining the Sharps' financial condition. With no contrary evidence presented, the Sharps' financial condition seems apparent -- they earn $25,413.96, and spend $25,347.96 annually. Excluding Anderson's claim, the Sharps have $67,299.15 secured debt, $81,001.01 total debt, and assets valued at $63,444.04.[1] Evidence presented at the hearing made it clear that the Sharps' lack of financial records frustrated Anderson's attempts to determine how much money is rightfully hers under the guardianship, but failed to show that the Sharps' financial condition is in question. Therefore, the Sharps will still be allowed a discharge under § 727(a)(3).

## 11 U.S.C. § 727(a)(5)

Anderson, in what is purportedly her main allegation, avers that the Sharps cannot explain where the Sharps' assets have gone, and thus violate § 727(a)(5). Section 727(a)(5), provides that a discharge may be denied if "the debtor has failed to explain satisfactorily, . . . , any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). "The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing." *Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 766 (B.A.P. 8th Cir. 2002), aff'd by *Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 65 Fed Appx. 99 (8th Cir. 2003). However, "[t]he Code does not require that the Debtor's explanation be meritorious, 'or that the loss or other disposition of assets be proper; it only

---

[1] This information is from the Sharps' bankruptcy schedules.

4

requires that the explanation satisfactorily account for the disposition.'" *Dunkerton Cooperative Elevator v. Bakker* (*In re Bakker*), 2006 WL 240519, 4 (Bankr.N.D.Iowa) (quoting *In re Caulfield*, 192 B.R. 808, 921 (Bankr.E.D.N.Y. 1996)). Here, neither party alleged that the Sharps hid or otherwise disposed of assets in such a way as to render them missing. Testimony from the hearing indicated that any assets not directly spent on Anderson were used by the Sharps as a family, thus accounting for all assets. Therefore, the Sharps will still be allowed a discharge under § 727(a)(5).

## 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) requires that the Anderson demonstrate: 1) the Sharps made a false representation; 2) at the time the representation was made the Sharps knew it was false; 3) the Sharps subjectively intended to deceive Anderson at the time they made the representation; 4) Anderson justifiably relied upon the representation; and 5) Anderson was damaged. *In re Preece*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). The evidence presented at the hearing does not support the conclusion that the Sharps were attempting to deceive Anderson. Anderson had unfettered access to the Sharps' records, which she used to remove some of her own documents, and was able to freely write checks from the family bank account using Lisa Sharp's name. The Sharps' failure in maintaining Anderson's estate stems not from any intent to deceive, but from a lack of understanding regarding the responsibilities of a guardian, and from poor financial judgment. Therefore, the Court finds that the Sharps were uninformed, and immature guardians of the estate, and that they were, without doubt, bad record keepers; but also without doubt, without intention.

## 11 U.S.C. § 523(a)(6)

Section § 523(a)(6) provides for an exception to discharge in the case that the debt arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Willful and malicious are two distinct elements of a § 523(a)(6) exception to discharge that each must be demonstrated by a preponderance of the evidence. *Fisher v. Scarborough* (*In re Scarborough*), 171 F.3d 638, 641 (8th Cir. 1999). The act creating the debt must be done with intent to cause injury, as opposed to an intentional action from which injury results. See *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Here, the Sharps kept inadequate records. Both Sharps testified that they were unaware of the requirement to file annual accountings to the court, and both admitted to being unable to read the handwritten language at the bottom of the Guardianship Order. No testimony or evidence presented indicated that the Sharps were attempting to punish or harm Anderson in any way. Therefore, the Sharps' failure to leave Anderson's estate untouched was not an act done with intent to cause injury, and the debt remains dischargeable based on § 523(a)(6).

## 11 U.S.C. § 523(a)(4)

Finally, "[t]o prevail in an action under § 523(a)(4), the Plaintiffs must prove '(1) that a fiduciary relationship existed between Debtor and Plaintiff; and (2) that Debtor committed fraud or defalcation in the course of that fiduciary relationship.'" *In re Garretson*, 377 B.R. 214, 222 (Bankr.E.D.Ark. 2007) (citing *In re Ziadeh*, 284 B.R. 893, 898 (Bankr.N.D.Iowa 2002)).

"Whether a person is a fiduciary is a question of federal law." *Tudor Oaks Limited Partnership v. Cochrane* (*In re Cochrane*), 124 F.3d 978, 984 (8th Cir. 1997). However, "a statute or other state law rule may create fiduciary status which is cognizable in bankruptcy proceedings." *Chao v. Gott* (*In re Gott*), 387 B.R. 17, 22 (Bankr.S.D.Iowa 2008). Further, reference in the Bankruptcy Act to "fiduciaries" only apply to express or technical trusts. *In re Long*, 774 F.2d 875, 878 (8th Cir. 1985). Yet, "[t]he 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *Chao*, 387 B.R. at 22 (quoting *In re Wheeler*, 317 B.R. 783, 789 (Bankr.N.D.Iowa 2004)). In Arkansas, "[t]o the extent applicable, the law of trusts shall apply to the duties and liabilities of a guardian of the estate." Ark. Code Ann. § 28-65-301(b)(2). Guardians are also listed under Arkansas trust law as one of the fiduciaries allowed to bind and represent their ward. Ark. Code Ann. § 28-73-303. Therefore, the Sharps had a fiduciary responsibility as guardians of Anderson's estate, and the relationship between them constitutes an "express trust," since trust-type obligations are imposed upon guardians of the estate.

"Defalcation is defined as the 'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.'" *In re Garretson*, 377 B.R. 214, 222 (Bankr.E.D.Ark. 2007) (citing *Tudor Oaks Limited Partnership v. Cochrane* (*In re Cochrane*), 124 F.3d 978, 984 (8th Cir. 1997)). "Defalcation does not require evidence of intentional fraud or other intentional wrongdoing." *Id.* "A failure to apply funds entrusted

7

to a fiduciary in accordance with the terms of the trust is defalcation, whether intentional or not." *Garretson*, 377 B.R. at 222 (citing *In re Herndon*, 277 B.R. 765, 769 (Bankr.E.D.Ark. 2002)).  In *In re Herndon*, 277 B.R. 765 (Bankr.E.D.Ark. 2002), the debtor applied money it received from one creditor to debts incurred on other projects.  The Court found that the debtor had committed defalcation as a fiduciary within the meaning of 11 U.S.C. § 523(a)(4). *Herndon*, 277 B.R. at 769.  In *In re Fox*, 357 B.R. 770 (Bankr.E.D.Ark. 2006), the Court held, "use of the trust *res* to pay for anything other than the beneficiaries it is intended to benefit constitutes a defalcation." *Fox*, 357 B.R. at 780.

Here, the guardianship order states (albeit in nearly illegible handwriting) that the funds of Anderson's estate were to be put in an FDIC insured facility, and held subject to a further court order.  It is uncontested that funds received on behalf of Anderson were placed into the family account, and removed at will.  It is also uncontested that money was removed from a certificate of deposit account without a court order.  Nor can the Sharps fully account for how they used Anderson's estate.  Therefore, the Sharps acted inconsistent with the terms of their trust -- here, their guardianship -- and in violation of their fiduciary obligation to Anderson.  Since this debt resulted from defalcation in a fiduciary relationship, it is excepted from discharge under § 523(a)(4).

## CONCLUSION

The "central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and

discouragement of preexisting debt." (Internal quotations omitted). *Grogan v. Garner*, 498 U.S. 279, 286 (1991). However, the § 523 exceptions demonstrate a Congressional decision that the "creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Id.* at 287. The Sharps' actions here do not warrant denying them a chance at a fresh start. However, misappropriating Anderson's estate is an example of one of the actions Congress expressly exempted from discharge in § 523. Evidence at the hearing made it clear, though, that the Sharps were honestly trying to spend the money on Anderson to give her a good life as she grew up in their home. Therefore, the amount to be exempted from discharge is the amount of Anderson's estate not reasonably spent on Anderson.

The exact dollar amount to be exempted from discharge must still be determined. To do so will require an accounting of Anderson's estate from the time of its creation to the time of its termination, including an evaluation of all income and expenses during that time period. Such an accounting raises issues and concerns wholly within the realm of Arkansas law.[2] Therefore, recognizing that a Petition for Accounting and a suit for conversion are already pending before the Poinsett County Circuit Court, this Court, pursuant to § 305(a), suspends further proceedings in this case on these issues until the Petition for Accounting and

---

[2] For example, there is authority suggesting that neither Social Security nor Worker's Compensation are part of a guardianship estate. See Ark. Code Ann. § 11-9-110 (providing that worker's compensation is not subject to execution or other legal process); and 42 U.S.C. § 407 (providing that Social Security benefits are not subject to execution or other legal process).

9

the suit for conversion are completed.[3] Accordingly, it is hereby

**ORDERED** that the Sharps may owe Anderson an amount which is nondischargeable to the extent that funds from her estate were not reasonably spent on her; and,

**ORDERED** that this Court shall suspend further proceedings in this case until the Petition for Accounting and suit for conversion, both pending in state court, are completed, and the state court determines to what extent Anderson's estate was reasonably spent on her.

**IT IS SO ORDERED.**

*/s/ Audrey R. Evans*
_____
HONORABLE AUDREY R. EVANS
UNITED STATES BANKRUPTCY JUDGE

DATE: August 19, 2008


CC:  Attorney for Plaintiff
     Attorney for Defendant(s)
     Plaintiff
     Defendant(s)
     Warren E. Dupwe, Trustee
     U.S. Trustee

---

[3] The Court recognizes that Anderson specifically requests a judgment in her favor for $231,779.39. However, no cause of action alleged in the Complaint gives rise to such relief. Therefore, no such relief will be granted.